698 So.2d 9 (1997)
ARCADIAN CORPORATION, et al., Plaintiffs  Appellants,
v.
OLIN CORPORATION, et al., Defendants  Appellees.
No. 97-174.
Court of Appeal of Louisiana, Third Circuit.
June 18, 1997.
*10 Gregory Preston Massey, Lake Charles, Frederick Scott Kaiser, and Mark Charles Dodart, New Orleans, for Arcadian Corp., et al.
Thomas M. Bergstedt, Lake Charles, Susan McGreevy, Kansas City, MO, for Olin Corp., et al.
Joseph J. Lowenthal, Jr., Stewart Earl Niles, Jr., Richard T. Gallagher, Jr., New Orleans, for Schoeller-Bleckmann Gesellschaft, M.B.H.
R. Joshua Koch, Jr., Metairie, Terrence Charles McRea, Richard G. Urquhart, Dallas, TX, for Industiral Risk Insurers & Reliance Nat. Ins. Co.
Caleb H. Didriksen, III, Michael D. Carbo, Denise A. Bostick, New Orleans, for Lexington Ins. Co.
Randy Donato, Brook F. Minz, Houston, TX, for Phoenix Assurance, P.L.C.
Before THIBODEAUX, PETERS and SULLIVAN, JJ.
PETERS, Judge.
This suit arises out of the explosion of a high pressure reactor which was part of a nitrogen fertilizer complex located in Westlake, Louisiana, and owned by Arcadian Corporation. Certain insurance companies, which insured Arcadian Corporation for its losses, have brought this action against Olin Corporation, seeking reimbursement for payments made pursuant to their policy obligations. Olin Corporation is the company which contracted for the design and construction of the nitrogen fertilizer complex. Eight days before trial, Olin Corporation filed an exception of no right of action against two of the insurers, Reliance Insurance Company and Industrial Risk Insurers, and that exception was heard and granted before trial commenced. Among other things in its judgment, the trial court assessed one-fourth of the cost of the litigation to Schoeller-Bleckmann Gesellschaft m.b.H., a company which had previously been retained to examine the reactor for leaks and which was a party to the litigation by virtue of a cross-claim filed by Olin Corporation. *11 The two insurers and Schoeller-Bleckmann Gesellschaft m.b.H. have appealed.

DISCUSSION OF THE RECORD
We first note that no evidence was presented in support of the exception of no right of action and no stipulations were entered into by the litigants. The record of the hearing on the exception consists of extensive argument by counsel for the litigants with the attorneys appearing to agree that certain facts were not in dispute while disagreeing on others.
What does not appear to be in dispute for the purpose of this appeal is that on July 28, 1992, Arcadian Corporation was the owner of an industrial complex in Westlake, Louisiana, where it manufactured a fertilizer compound called urea. The urea was manufactured by the use of a high pressure vessel, the R-2 Urea Reactor, which converted ammonia carbamate and water into urea. On July 28, 1992, the urea reactor ruptured and exploded, causing damage to the entire complex and the surrounding property and interrupting Arcadian's urea production. As a result of the explosion, Arcadian Corporation was forced to terminate production and close its plant. Additionally, Arcadian Corporation was required to pay compensation to those suffering personal injury as a result of the explosion and penalties to the Occupational Safety and Health Administration. Arcadian Corporation claims to have suffered a total loss of $27,663,543.00.
At the time of the explosion, Arcadian Corporation had in effect various insurance policies, providing coverage for the plant's operations. These policies essentially provided two general types of coverage, boiler and machinery insurance coverage and allrisk insurance coverage. Reliance Insurance Company provided the boiler and machinery coverage, while Lexington Insurance Company provided the primary all-risk insurance with coverage up to $5,000,000.00. A number of insurance companies, including Industrial Risk Insurers, provided the excess all-risk insurance coverage above $5,000,000.00. All of the policies contained loss adjustment endorsements, which allowed Arcadian Corporation to receive payments under the policies even when the insurers were unable to agree as to which policy provided coverage for a particular incident. Under the loss adjustment endorsements, the insurers would pay any amount that they agreed was covered by their policy. As to the amount that remained in dispute, upon the written demand of Arcadian Corporation, the all-risk insurers would pay one-half of the amount according to a pro rata share based on their policy coverages and the remaining one-half would be paid by the boiler and machinery insurer. In calculating the amount to be paid, the amount in dispute is reduced by the highest deductible contained in any of the policies. The all-risk insurance policies contained deductibles of $500,000.00, and the boiler and machinery policy provided for a deductible of $1,750,000.00.
Following the explosion, the insurers were unable to agree on which policies provided coverage for the incident. By written demand, Arcadian Corporation invoked the loss adjustment endorsements contained in its insurance policies. Thus, after subtracting the highest deductible, the insurers were still obligated to Arcadian Corporation for $25,913,543.00 with each type of insurance owing one-half of that amount pursuant to the terms of the loss adjustment endorsements. As the only boiler and machinery insurer, Reliance Insurance Company paid $12,956,772.00 to Arcadian Corporation. The all-risk insurers split their one-half according to a pro rata share based on their policy coverages. Thus, Lexington Insurance Company, as the primary insurer, paid its policy limits of $5,000,000.00. Industrial Risk Insurers provided fifty percent of the excess coverage and paid $3,978,386.00 to Arcadian Corporation in satisfaction of its obligation under the loss adjustment endorsement.
The policies additionally provided that payments by the insurers under the loss adjustment endorsements signified their agreement to submit the dispute to arbitration to determine the proper allocation of damages to each insurer. By virtue of the policies' terms, the insurers were subrogated to any rights that Arcadian Corporation might have against a third party in connection with the incident. At the time the exception was *12 granted, no arbitration proceedings had taken place.
On July 28, 1993, Arcadian Corporation and its insurers filed suit, naming numerous defendants, including Olin Corporation, and seeking to recover for the losses associated with the explosion, including all amounts to which the insurers were subrogated or entitled to receive.[1] Olin Corporation was sued in its capacity as the original owner of the industrial complex and as the party who had contracted for its design and construction in 1965. Apparently, on August 17, 1989, Olin Corporation sold the Westlake industrial complex, which specifically included the R-2 reactor vessel, to Fertilizer Acquisition Company III. Later in 1989, Fertilizer Acquisition Company III merged into Fertilizer Acquisition Company II and subsequently changed its name to Arcadian Corporation. The plaintiffs allege that Olin Corporation is liable for breach of contract, breach of warranty, and negligence.
Trial was set to commence on October 23, 1996, but on October 15, 1996, Olin Corporation filed an exception of no right of action. In its exception, Olin Corporation contended that a Texas court had ordered that the insurers proceed to arbitration and that this arbitration proceeding amounted to a suspensive condition which prevented Industrial Risk Insurers and Reliance Insurance Company from proceeding in this action. At the hearing on the exception, Olin Corporation argued that as a result of the arbitration proceedings, one of the insurers could be found to provide one hundred percent of the coverage for this accident, and if so, the other insurers would have no right of action for recovery against Olin Corporation because the insurer found to provide the coverage would be required to reimburse them. However, Olin Corporation only argued to the trial court that a Texas court order existed. No evidence of the order was presented to establish the specific terms of the arbitration requirement, and the parties were unable, even in oral argument, to agree as to the effect of the order or whether it even existed. Additionally, Reliance Insurance Company and Industrial Risk Insurers argued that the insurers might agree not to proceed to arbitration if they received reimbursement from Olin Corporation in this suit. Thus, arbitration could possibly never occur.
Following a hearing on the exception, the trial court granted the exception, finding that:
The arbitration agreement in the contracts and now ordered by the Texas court constitutes a suspensive condition. The arbitrator's apportionment will ultimately determine the loss of each insurer. If the arbitrator decides that the whole loss should be borne by Reliance, then IRI has no interest in pursuing a claim against Olin. If IRI and the other all risk insurers bear the whole loss by virtue of the arbitrator's decision, then Reliance has no interest in pursuing a claim against Olin.
This Court feels that it is absurd for this Court to render a judgment for an amount which the judgment creditor may not owe. To prevent litigation by persons who have no interest to protect is the raison d'etre of the Exception of No Right of Action. The Exception is sustained. This Court finds as an alternative that the plaintiff's claims are premature in that they antedate the fixing of the actual loss sustained by each of the plaintiffs.

(Emphasis added).
The trial court refused to stay the proceedings until the conclusion of the arbitration proceedings and dismissed plaintiffs' suit without prejudice. Additionally, the trial court assessed costs one-fourth to Arcadian Corporation, one-fourth to Olin Corporation, one-fourth to Industrial Risk Insurers and Reliance Insurance Company, and one-fourth to Schoeller-Bleckmann Gesellschaft m.b.H.

OPINION
The trial court concluded that the claims of Industrial Risk Insurers and Reliance Insurance Company were subject to a suspensive condition and thus, found that they had no *13 right of action. In the alternative, the trial court found that their claims were premature.
A party bringing an action must have a real and actual interest which he is asserting. La.Code Civ.P. art. 681. The exception of no right of action is intended to provide a threshold test to determine whether the plaintiff has a real and actual interest in the action. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Comm'n, 94-2015 (La.11/30/94); 646 So.2d 885. Its function is to determine whether the plaintiff is a member of the class of persons to whom the law grants the cause of action which has been asserted in the suit. Id. "The exception of no right of action assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation." Id. at p. 5; 646 So.2d at 888 (footnote omitted).
Our analysis requires that we assume that the petition states a valid cause of action against Olin Corporation, and we are only required to determine whether Industrial Risk Insurers and Reliance Insurance Company possess the legal capacity to pursue such a claim. Unlike an exception of no cause of action, evidence may be presented in connection with an exception of no right of action to show that the plaintiff does not possess the right it claims or that the right does not exist. Parks v. Winnfield Life Ins. Co., 336 So.2d 1021 (La.App. 3 Cir.), writ refused, 339 So.2d 351 (La.1976) [quoting Hargroder v. Columbia Gulf Transmission Co., 290 So.2d 874, 875 (La.1974)]. As previously stated, Olin Corporation presented no evidence in support of its exception of no right of action. In fact, there is not even any evidence in the record that a Texas court has ordered arbitration. We find that the trial court erred in granting the exception of no right of action based on the existence of the arbitration proceedings.
The trial court concluded in the alternative that the plaintiffs' action was premature. A claim that an action is premature must be raised by a dilatory exception prior to answer or judgment by default. La.Code Civ.P. art. 928(A). The objection that an action is premature is waived unless it is raised in the dilatory exception. La.Code Civ.P. art 926. Olin Corporation failed to raise an exception of prematurity to this action, and thus, any such exception has been waived. Therefore, we find that the trial court erred in concluding that this action was premature.
Schoeller-Bleckmann Gesellschaft m.b.H. has appealed the assessment of costs by the trial court. Since we reverse the entirety of the trial court's judgment and remand this case to the district court for further proceedings, we do not need to address this issue.

DISPOSITION
For the foregoing reasons, the judgment of the trial court is reversed and this matter is remanded for further proceedings. All costs of this appeal are assessed to Olin Corporation.
REVERSED AND REMANDED.
NOTES
[1] Reliance was not named as a plaintiff in this original petition but rather filed an amended petition in intervention on August 26, 1996.